JOHN F. BARG (SBN 60230; jbarg@bargcoffin.com)
JAMIE JEFFERSON (SBN 197142; jjefferson@bargcoffin.com)
DAVID M. METRES (SBN 273081; dmetres@bargcoffin.com)
BARG COFFIN LEWIS & TRAPP, LLP
600 Montgomery Street, Suite 525
San Francisco, California 94111
Telephone: (415) 228-5400
Fax: (415) 228-5450

Attorneys for Plaintiff BNSF RAILWAY COMPANY,
a Delaware corporation

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BNSF RAILWAY COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC STEEL, INC., a California Corporation,<br><br>Defendant. | Case No. **'23CV1202 BEN KSC**<br><br>**COMPLAINT BY PLAINTIFF BNSF RAILWAY COMPANY FOR:**<br><br>1. **SPECIFIC PERFORMANCE;**<br>2. **BREACH OF CONTRACT;**<br>3. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>4. **EXPRESS CONTRACTUAL INDEMNITY;**<br>5. **NUISANCE;**<br>6. **TRESPASS;**<br>7. **NEGLIGENCE;**<br>8. **WASTE;**<br>9. **EQUITABLE AND IMPLIED INDEMNITY AND CONTRIBUTION;**<br>10. **CONTRIBUTION UNDER CALIFORNIA'S HAZARDOUS SUBSTANCES ACCOUNT ACT;**<br>11. **CONTRIBUTION UNDER FEDERAL COMMON LAW;**<br>12. **AND DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, BNSF RAILWAY COMPANY, alleges:

1

4888-4419-0311.v2

**NATURE OF THE CASE**

1.      Through this complaint, BNSF RAILWAY COMPANY, ("**Plaintiff**" or "**BNSF**") seeks redress against its former tenant PACIFIC STEEL, INC. ("**Defendant**" or "**PSI**") for damaging BNSF's property located immediately adjacent to and west of PSI's property at 1700 Cleveland Avenue in National City, California (the "**Property**") and for failing to pay rent. From the late 1970s to February 2023, PSI operated a metal recycling business on the BNSF-owned Property and an adjacent property owned by PSI. However, since at least 2002, PSI has failed to comply with Federal and State environmental laws, releasing hazardous substances and hazardous waste constituents, including heavy metals, polychlorinated biphenyls ("PCBs"), polycyclic aromatic hydrocarbon compounds ("PAHs"), phthalate compounds, and volatile organic compounds ("VOCs"), into the environment and contaminating the BNSF Property. Twice, the California Department of Toxic Substances Control ("DTSC") sued PSI for its environmental violations, first in 2004 and again in 2015. Each time, the Superior Court entered orders commanding PSI to investigate and remediate this contamination and to operate its business in compliance with State laws. Despite these court orders and related DTSC administrative orders requiring PSI to take swift action to remediate the Property, PSI has failed to do so over the last 19 years. In addition to failing to clean up the Property, PSI failed to pay rent to BNSF for the Property and has otherwise failed to carry out its responsibilities owed to BNSF under the leases. BNSF terminated PSI's leases on February 12, 2023, and files this lawsuit to enforce its rights under the leases, recover unpaid rent owed to BNSF, recover damages for the harm caused to BNSF's Property, and obtain a judgment requiring PSI to pay the costs BNSF will incur to remediate the Property under the guidance of DTSC.

## THE PARTIES

2.      Plaintiff BNSF is the successor-in-interest to The Burlington Northern and Santa Fe Railway Company and The Atchison Topeka and Santa Fe Railway Company and a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Fort Worth, Texas.

3.      Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned and relevant hereto, Defendant PSI was, and is, a corporation organized and existing under the laws of the State of California, with its principal place of business in the City of National City, County of San Diego, State of California.

## JURISDICTION AND VENUE

4.      Defendant PSI is a citizen of the State of California with its principal place of business also in California. Plaintiff is a citizen of the State of Delaware with its principal place of business in the State of Texas. The matter in controversy is in excess of $75,000, exclusive of interest and costs. Thus, the Court has jurisdiction under 28 U.S.C. section 1332.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. section 1391 because the breach of the leases, and releases and threatened releases of hazardous substances that gave rise to the claims in this action, occurred in this district, and because the Property is located in this district.

## FACTUAL ALLEGATIONS

### The 1977 and 1978 Leases and Lease Supplements

6.      Plaintiff BNSF is the owner of the Property located on San Diego County Assessor Parcel Nos. 559-040-46 and 559-040-52.

7.      On or about August 1, 1977, Plaintiff's predecessor-in-interest The Atchison, Topeka & Santa Fe Railway Company, as Lessor, entered into a lease agreement (Contract No. 154033) with Scrap Disposal, Inc., as Lessee, for the use of the northern and central portion of the Property for handling and storage of

3

scrap materials (the "**1977 Lease**"). Plaintiff is informed and believes and based thereon alleges that Defendant PSI is the successor-in-interest to Scrap Disposal, Inc.

8.    Among other things, the 1977 Lease included the following provisions:

a.    Lessee shall pay rent to Lessor in advance on a per annum basis in an amount subject to revision every three (3) years. 1977 Lease § 3.

b.    "Lessee shall keep and maintain the Premises and Improvements in such safe, sanitary, and sightly condition as shall be satisfactory to Lessor…" *Id*. § 7.

c.    "In using the Premises, and in constructing, maintaining, operating and using the Improvements thereon, Lessee shall comply with any and all requirements imposed by federal or state statutes, or by the ordinances, orders, or regulations of any governmental body having jurisdiction thereover." *Id*. § 8.

d.    "Lessee agrees to indemnify and save harmless Lessor against all loss, damage or expense which Lessor may sustain, incur, or become liable for, including loss of or damage to property or injury to or death of persons and fines and penalties imposed upon or assessed against Lessor, arising in any manner out of (a) the use of the Premises or Improvements by Lessee, (b) any breach by Lessee of the terms, covenants or conditions in this instrument contained, or (c) the sole or contributing acts or omissions of Lessee or the employees, agents, patrons or invitees of Lessee in, on or about the Premises or Improvements, except that if Lessor shall participate in any such contributing acts or omissions, then the loss, damage or expense arising therefrom shall be borne by the parties hereto equally." *Id*. § 9.

e.    "If any rental hereunder shall be due and unpaid, or if default shall be made in any of the covenants or agreements of Lessee herein contained, or in case of any assignment or transfer of this lease by operation of law, Lessor may,

4

4888-4419-0311.v2

at its option, terminate this lease by serving five (5) days' notice in writing upon Lessee; but any waiver by Lessor of any default or defaults shall not constitute a waiver of the right to terminate this lease for any subsequent default or defaults." *Id*. § 13.

        f.    "<u>This lease may be terminated at any time by either party by serving thirty (30) days' written notice of</u> termination upon the other party…" *Id*. § 14 (emphasis in original).

        g.    "Upon the termination of this lease in any manner herein provided, Lessee shall forthwith surrender to Lessor the possession of the Premises and shall remove the Improvements and restore the Premises to substantially the state in which they were prior to the construction of the Improvements, and in case Lessee shall fail within thirty (30) days after the date of such termination to make such removal or restoration, then Lessor may, at its election to be exercised within thirty (30) days thereafter, either remove the Improvements and restore the Premises for the account of Lessee, and in such event Lessee shall within thirty (30) days after the rendition of bill therefor reimburse Lessor for the cost so incurred, or may take and hold the Improvements as its sole property." *Id*. § 16.

        h.    "All of the covenants and agreements of Lessee herein contained shall be binding upon the heirs, legal representatives, successors and assigns of Lessee, and shall inure to the benefit of the successors and assigns of Lessor." *Id*. § 19.

    9.    On or about July 25, 1983, Lessor and Lessee amended the 1977 Lease with a Supplemental Agreement, which replaces Sections 6 and 22 (the "**1977 Lease Supplement 6**").

        a.    Section 6(a) now states: "Lessee shall use the Premises exclusively as a site for handling and storage of scrap materials. Lessee covenants that it will not treat, store or dispose of on the Premises 'hazardous waste' or 'hazardous substances', as 'hazardous waste' and 'hazardous substances' may now

5

or in the future be defined by any federal, state, or local governmental agency or body. In the event the Premises are now or in the future used in generating, handling, or transporting of 'hazardous waste' or 'hazardous substances', Lessee agrees fully to comply with all applicable federal, state, and local laws, rules, regulations, orders, decisions and ordinances (hereinafter referred to as 'Standards') concerning 'hazardous waste' and 'hazardous substances'. Lessee further agrees periodically to furnish Lessor with proof, satisfactory to Lessor, that Lessee is in such compliance. . ." *Id*. § 6(a).

      b.    Section 6(b) now states: "Notwithstanding anything contained in the liability sections hereof, in case of a breach of the obligations contained in this Section, or any of them, regardless of the negligence or alleged negligence of Lessor, Lessee agrees to assume liability for and to save and hold harmless Lessor from and against all injuries to any person and damage to property, including without limitation, employes [sic] and property of Lessor and Lessee and all related expenses, including without limitation attorneys' fees, investigators' fees and litigation expenses, resulting in whole or in part from Lessee's failure to comply with any Standard issued by any governmental authority concerning hazardous substances and/or hazardous waste. Lessee, at its cost, shall assume the defense of all claims, suits or actions brought for damages, and fines or penalties hereunder, regardless of whether they are asserted against Lessor or Lessee. Lessee also agrees to reimburse Lessor for all costs of any kind incurred as a result of the Lessee's failure to comply with this Section, including, but not limited to, fines, penalties, clean-up and disposal costs, and legal costs incurred as a result of Lessee's generating, handling, transporting, treating, storing, or disposing of 'hazardous waste' or 'hazardous substances' on the Premises." *Id*. § 6(b).

      c.    Section 22 now states: "Notwithstanding any other provisions of this Lease, Lessee shall comply with all statutes, ordinances, rules, regulations, orders and decisions (hereinafter referred to as 'Standards'), issued by any federal,

6

4888-4419-0311.v2

state or local governmental body or agency established thereby (hereinafter referred to as 'Authority'), relating to Lessee's use of the Premises hereunder. In its use of the Premises, Lessee shall at all times be in full compliance with all Standards, present or future, set by any Authority, including, but not limited to, Standards concerning air quality, water quality, noise, hazardous substances and hazardous waste. . . Lessee shall assume liability for and shall save and hold harmless the Lessor from any claim of a violation of such Standards regardless of the nature thereof or the Authority or person asserting such claim, which results from Lessee's use of the Premises, whether such claim arises in whole or in part from the negligence or alleged negligence of the Lessor or otherwise. Lessee, at its cost, shall assume the defense of all such claims regardless of whether they are asserted against Lessee or Lessor." *Id.* § 22.

10. On or about May 31, 1988, Lessor and Lessee amended the 1977 Lease with a Supplemental Agreement that reduced the area of the premises subject to the Lease and required PSI to construct and maintain a fence or barricade along the boundary of the Property throughout the duration of the Lease term (the "**1977 Lease Supplement 7**").

11. Except as modified by the 1977 Lease Supplements, including those not referenced by this Complaint, the terms and conditions of the 1977 Lease remain in full force and effect. The 1977 Lease and 1977 Lease Supplements, including those not referenced herein, are collectively referred to herein as the "**1977 Lease**."

12. On or about November 1, 1978, Plaintiff's predecessor-in-interest The Atchison, Topeka & Santa Fe Railway Company, as Lessor, entered into a second lease agreement (Contract No. 158246) with Scrap Disposal, Inc., as Lessee, for the use of the southern portion of the Property for handling and storage of scrap materials (the "**1978 Lease**"). Plaintiff is informed and believes and based thereon alleges that Defendant PSI is the successor-in-interest to Scrap Disposal, Inc.

7

13.     The provisions of the 1978 Lease largely mirror those of the 1977 Lease. Under the 1978 Lease:

a.      Lessee shall pay rent to Lessor in advance on a per annum basis in an amount subject to revision every three (3) years. 1978 Lease § 3.

b.      "Lessee shall keep and maintain the Premises and Improvements in such safe, sanitary, and sightly condition as shall be satisfactory to Lessor…" *Id*. § 7.

c.      "In using the Premises, and in constructing, maintaining, operating and using the Improvements thereon, Lessee shall comply with any and all requirements imposed by federal or state statutes, or by the ordinances, orders, or regulations of any governmental body having jurisdiction thereover." *Id*. § 8.

d.      "Lessee agrees to indemnify and save harmless Lessor against all loss, damage or expense which Lessor may sustain, incur, or become liable for, including loss of or damage to property or injury to or death of persons and fines and penalties imposed upon or assessed against Lessor, arising in any manner out of (a) the use of the Premises or Improvements by Lessee, (b) any breach by Lessee of the terms, covenants or conditions in this instrument contained, or (c) the sole or contributing acts or omissions of Lessee or the employees, agents, patrons or invitees of Lessee in, on or about the Premises or Improvements, except that if Lessor shall participate in any such contributing acts or omissions, then the loss, damage or expense arising therefrom shall be borne by the parties hereto equally." *Id*. § 9.

e.      "If any rental hereunder shall be due and unpaid, or if default shall be made in any of the covenants or agreements of Lessee herein contained, or in case of any assignment or transfer of this lease by operation of law, Lessor may, at its option, terminate this lease by serving five (5) days' notice in writing upon Lessee; but any waiver by Lessor of any default or defaults shall not constitute a

waiver of the right to terminate this lease for any subsequent default or defaults." *Id*. § 13.

   f. "<u>This lease may be terminated at any time by either party by serving thirty (30) days' written notice of </u>termination upon the other party…" *Id*. §14 (emphasis in original).

   g. "Upon the termination of this lease in any manner herein provided, Lessee shall forthwith surrender to Lessor the possession of the Premises and shall remove the Improvements and restore the Premises to substantially the state in which they were prior to the construction of the Improvements, and in case Lessee shall fail within thirty (30) days after the date of such termination to make such removal or restoration, then Lessor may, at its election to be exercised within thirty (30) days thereafter, either remove the Improvements and restore the Premises for the account of Lessee, and in such event Lessee shall within thirty (30) days after the rendition of bill therefor reimburse Lessor for the cost so incurred, or may take and hold the Improvements as its sole property." *Id*. § 16.

   h. "All of the covenants and agreements of Lessee herein contained shall be binding upon the heirs, legal representatives, successors and assigns of Lessee, and shall inure to the benefit of the successors and assigns of Lessor." *Id*. § 19.

  14. On or about July 25, 1983, Lessor and Lessee also amended the 1978 Lease with a Supplemental Agreement, which replaces Sections 6 and 20 among other revisions (the "**1978 Lease Supplement 2**").

   a. Section 6(a) now states: "Lessee shall use the Premises exclusively as a site for handling and storage of scrap materials. Lessee covenants that it will not treat, store or dispose of on the Premises 'hazardous waste' or 'hazardous substances', as 'hazardous waste' and 'hazardous substances' may now or in the future be defined by any federal, state, or local governmental agency or body. In the event the Premises are now or in the future used in generating,

9

handling, or transporting of 'hazardous waste' or 'hazardous substances', Lessee agrees fully to comply with all applicable federal, state, and local laws, rules, regulations, orders, decisions and ordinances (hereinafter referred to as 'Standards') concerning 'hazardous waste' and 'hazardous substances'. Lessee further agrees periodically to furnish Lessor with proof, satisfactory to Lessor, that Lessee is in such compliance. . ." *Id.* § 6(a).

   b. Section 6(b) now states: "Notwithstanding anything contained in the liability sections hereof, in case of a breach of the obligations contained in this Section, or any of them, regardless of the negligence or alleged negligence of Lessor, Lessee agrees to assume liability for and to save and hold harmless Lessor from and against all injuries to any person and damage to property, including without limitation, employes [sic] and property of Lessor and Lessee and all related expenses, including without limitation attorneys' fees, investigators' fees and litigation expenses, resulting in whole or in part from Lessee's failure to comply with any Standard issued by any governmental authority concerning hazardous substances and/or hazardous waste. Lessee, at its cost, shall assume the defense of all claims, suits or actions brought for damages, and fines or penalties hereunder, regardless of whether they are asserted against Lessor or Lessee. Lessee also agrees to reimburse Lessor for all costs of any kind incurred as a result of the Lessee's failure to comply with this Section, including, but not limited to, fines, penalties, clean-up and disposal costs, and legal costs incurred as a result of Lessee's generating, handling, transporting, treating, storing, or disposing of 'hazardous waste' or 'hazardous substances' on the Premises." *Id.* § 6(b).

   c. Section 20 now states: "Notwithstanding any other provisions of this Lease, Lessee shall comply with all statutes, ordinances, rules, regulations, orders and decisions (hereinafter referred to as 'Standards'), issued by any federal, state or local governmental body or agency established thereby (hereinafter referred to as 'Authority'), relating to Lessee's use of the Premises hereunder. In

10

its use of the Premises, Lessee shall at all times be in full compliance with all Standards, present or future, set by any Authority, including, but not limited to, Standards concerning air quality, water quality, noise, hazardous substances and hazardous waste. . . Lessee shall assume liability for and shall save and hold harmless the Lessor from any claim of a violation of such Standards regardless of the nature thereof or the Authority or person asserting such claim, which results from Lessee's use of the Premises, whether such claim arises in whole or in part from the negligence or alleged negligence of the Lessor or otherwise. Lessee, at its cost, shall assume the defense of all such claims regardless of whether they are asserted against Lessee or Lessor." *Id.* § 20.

15.    Except as modified by the 1978 Lease Supplements, including those not referenced by this Complaint, the terms and conditions of the 1978 Lease remain in full force and effect. The 1978 Lease and 1978 Lease Supplements, including those not referenced herein, are collectively referred to herein as the "**1978 Lease**."

**Early History of PSI's Operations**

16.    PSI or its predecessors operated a scrap metal recycling facility at the BNSF Property and the PSI-owned adjacent property from approximately 1977 to February 12, 2023. Prior to 1992, PSI engaged in auto shredding and metal recycling. After 1992, PSI engaged in metal recycling combined with other industrial operations such as welding.

17.    In 1987, the California Regional Water Quality Control Board ("Water Board") issued a Cleanup and Abatement Order to PSI to halt the discharge of contaminated runoff from its auto-shredding waste. From 1987 to 2002, the Water Board issued further directives to PSI relating to metals in the soil and their potential impact on water quality. PSI responded to these directives by completing a Contaminant Transport Assessment Report in 1991. According to the 2005 Interim Measures Workplan submitted to DTSC by PSI, PSI applied for a no

further action letter from the Water Board, but BNSF is not aware of any no further action letter being issued by the Water Board.

18.    In 1996, heavy equipment uncovered in the southern parcel of the BNSF Property a concentration of petroleum hydrocarbons, which required further characterization and removal. BNSF carried out this work to DTSC's satisfaction by 2002 or 2004, at the latest.

## DTSC Files Lawsuit to Force PSI to Follow the Law and Clean Up the BNSF Property and Adjacent PSI Property

19.    In or about 2002, in response to a citizen complaint, DTSC inspected the BNSF Property and adjacent PSI-owned property, and found soil containing hazardous wastes and hazardous waste constituents, including lead, zinc, copper, and other heavy metals, PCBs, PAHs, phthalate compounds, and VOCs.

20.    On or about September 24, 2002, DTSC issued to PSI an Imminent and Substantial Endangerment Order, requiring PSI to take immediate corrective action and submit a workplan to investigate and address releases at the Property.

21.    On or about July 26, 2004, the State of California and PSI entered into a Stipulation for Entry of Final Judgment and Injunction (the "**2004 Final Judgment**") to resolve DTSC's allegations that, among other things, PSI: (i) unlawfully stored the above-referenced hazardous wastes at six soil piles identified by the State as BNSF-1, BNSF-2, BNSF-3, BNSF-5, N-1, and N-2; (ii) unlawfully treated soil contaminated with hazardous waste; and (iii) unlawfully disposed of soil contaminated with hazardous waste on the Property and surrounding parcels owned by PSI.

22.    As part of the 2004 Final Judgment, PSI agreed to make a monetary payment to DTSC in the amount of $235,000, including costs, civil penalties, and twenty-five percent (25%) of the payment (or a payment of $58,750) for a Supplemental Environmental Project. In addition, PSI agreed to: (i) maintain effective covers over all piles of soil and other materials known to contain, or that

12

might contain, hazardous wastes for the purpose of preventing dispersion of hazardous waste constituents into the environment; and (ii) enter into a Corrective Action Consent Agreement with DTSC to carry out the investigation, corrective action, and removal or remedial action, as necessary, to address any release or threat of release of hazardous waste or hazardous waste constituents at or from the site. PSI also agreed to implement all actions required by DTSC pursuant to the Corrective Action Consent Agreement in accordance with DTSC-approved work plans, reports, and schedules, and to reimburse DTSC for costs incurred in overseeing the investigation, corrective action, and removal or remedial action, commencing with the date of the Corrective Action Consent Agreement.

23.    In August 2004, DTSC and PSI entered in a Corrective Action Consent Agreement ("**2004 Consent Agreement**") pursuant to the 2004 Final Judgment. Among other things, the 2004 Consent Agreement required PSI to submit an Interim Measures Workplan, which was to include, among other requirements: proposals for processing or removal of existing soil piles and proposals for the excavation, processing, or removal of approximately three feet of subsurface soil in a designated area; oversight and maintenance measures intended to reduce the release or threat of release of hazardous waste or hazardous constituents, such as soil pile covers, controls for surface water run-off and run-on, and dust control measures; a schedule for sampling of monitoring wells; and plans for the acquisition of all necessary permits and authorizations.

24.    To comply with the 2004 Consent Agreement, PSI submitted, and DTSC approved, an Interim Measures Work Plan in September 2005.

25.    As part of the Interim Measures Work Plan required by the Consent Agreement, PSI proposed treating soil onsite through use of a Transportable Treatment Unit known as the "Paydirt System," which DTSC approved. Onsite soil treatment began more than a year later in November 2006. Safety, oversight, and maintenance measures in the Interim Measures Work Plan included, among other

13

things, daily street sweeping, covering stockpiled materials, and use of an enclosed treatment unit. Tarps and water spray were to be used during all phases of the treatment process to reduce dust. In overseeing PSI's work, DTSC conducted routine inspections of the Site.

26.    After three years, in or about 2009, it was determined that the Paydirt System was not reducing the hazardous material onsite as anticipated. The Paydirt System addressed some surficial material, but failed to remove significant amounts of metals, PCBs, and other hazardous substances from the Property.

27.    It took PSI four more years, until 2013, to transport approximately 19,000 tons of non-RCRA hazardous waste to its facility in Mexico for recycling. The RCRA hazardous waste remained on site until at least 2015.

<u>**DTSC Documents PSI's Continuing Violations of the Hazardous Waste Control Law and 2004 Final Judgment**</u>

28.    During inspections of the Property and surrounding PSI parcels conducted between 2010 and 2013, DTSC observed a number of violations of the Hazardous Waste Control Law ("**HWCL**"), Cal. Health & Saf. Code, §§ 25100, et seq., and the 2004 Final Judgment (including the 2004 Consent Agreement, Interim Measures Work Plan, and other workplans approved pursuant thereto). More than ten years later, on or about February 12, 2015, site inspections continued to document that Site maintenance was "very poor."

29.    Plaintiff is informed and believes that DTSC issued at least four Notices of Violations to PSI dated August 9-10, 2020, October 11, 2011, March 1, 2012, and May 15, 2013 alleging, among other things, PSI's: (i) violation of California Health and Safety Code section 25201(c) for unauthorized disposal of hazardous waste to soil; (ii) a second violation of California Health and Safety Code section 25201(c) for unauthorized storage of hazardous waste in various locations at the Property; (iii) failure to keep hazardous waste containers closed; (iv) failure to operate the Paydirt System and processing area in a manner such as

14

to prevent releases or prevent the threat of releases of hazardous waste; (v) failure to adhere to safety, oversight, and maintenance measures, including sweeping, watering waste piles, and covering waste piles; (vi) failure to conduct routine inspections; (vii) failure to properly train personnel who manage hazardous waste; and, (viii) failure to cover a hazardous waste pile in a manner such as to prevent the release or threat of release of hazardous waste, as required by the Resource Conservation and Recovery Act ("**RCRA**"), 42 U.S.C., §§ 6901, et seq.

## DTSC Again Sues PSI to Prosecute PSI's Continuing Violations of the Hazardous Waste Control Law and 2004 Final Judgment

30.    Ultimately, because of the repeated and ongoing violations, in 2015, DTSC again sued PSI, alleging that PSI had "committed multiple violations of the HWCL," including by storing RCRA hazardous waste without authorization, and by violating other provisions of the HWCL and the terms of the 2004 Final Judgment. Among other allegations, DTSC alleged that PSI violated RCRA by failing to cover the above-discussed hazardous waste soil pile, alleging that the soil pile was then an 8,000 ton (50 cubic meter) RCRA-hazardous waste pile (the "**RCRA Hazardous Waste Pile**") on PSI property immediately adjacent to the BNSF Property. As a result, the hazardous waste soil pile was exposed to the air and stormwater, where releases occurred. PSI did not remove the remaining RCRA Hazardous Waste Pile until 2015, after DTSC filed this second lawsuit to enforce the 2004 Corrective Action Consent Agreement and the 2004 Final Judgment.

31.    BNSF is informed and believes and based thereon alleges that, as a result of a tentative agreement reached by DTSC and PSI in April 2015, PSI began shipping the RCRA Hazardous Waste Pile to a Class I landfill on July 29, 2015. PSI completed shipping the bulk of the RCRA Hazardous Waste Pile to a Class I landfill on September 12, 2015. PSI shipped the residual soils (the remaining RCRA hazardous waste mixed with other soil and debris) associated with removal on October 2, 2015.

32.     In or about December 2015, DTSC and PSI entered into a Stipulation for Entry of Judgment and Proposed Order to resolve DTSC's Complaint filed in San Diego County Superior Court Case No. 37-2015-00042417, *The People of the State of California, ex rel. Barbara A. Lee, Director, California Department of Toxic Substances Control v. Pacific Steel, Inc., et al.*, that PSI had violated the HWCL and 2004 Final Judgment (the "**2016 Stipulated Judgment**"). The 2016 Stipulated Judgment was approved by the Superior Court on January 5, 2016.

33.     The 2016 Stipulated Judgment included both injunctive and monetary terms and conditions. The injunctive requirements addressed ongoing compliance with the HWCL, 2004 Final Judgment, and 2004 Consent Agreement and related workplans, removal of the RCRA hazardous waste piles, dust control measures, and training. PSI also agreed to pay $138,000 in civil penalties to DTSC.

## PSI Violates the 2016 Stipulated Judgment and Order

34.     After entering this second Stipulation, PSI continued to delay completing its obligations to remediate the Property. For example, site characterization work plan activities began in 2014, but PSI did not complete the work plan and addenda until February 2019. Similarly, PSI's consultants only completed a Facility Investigation Report in July 2017, a year after first submitting it as a draft in July 2016.

35.     On May 29, 2019, PSI submitted a draft Interim Measures Workplan ("IMW") to DTSC focused on the BNSF Property. PSI's IMW identified elevated concentration of metals, (particularly lead, cadmium, copper, and zinc), PCBs, PAHs, and petroleum hydrocarbons in the soil at the Property.

36.     Following several revisions, DTSC approved the draft IMW, but PSI delayed finalizing the IMW until October 21, 2021, more than two years after submitting the draft IMW. The 30-day public comment period took place between March 30, 2022 and April 29, 2022. With no further requests for modification, the IMW was approved by DTSC for implementation on May 31, 2022.

37.     Despite this approval, PSI did not advance any work on the IMW for the next seven months.

38.     On December 6, 2022, DTSC sent PSI a letter stating that DTSC "has determined that [PSI] is out of compliance with the [2004] Corrective Action Consent Agreement . . . . [and] with the January 5, 2016 Final Judgment and Order on Consent ('Judgment') and Stipulation for Entry of Final Judgment and Order." The letter also stated DTSC's determination that "PSI is not in compliance with the [Corrective Action Consent Agreement] and such noncompliance is a violation of the Hazardous Waste Control Law, subjecting PSI to penalties of up to $70,000 for each day of noncompliance. Moreover, PSI's noncompliance with the [Corrective Action Consent Agreement] constitutes a violation of the Judgment and Stipulation in the matter of People v. PSI."

39.     Only after BNSF sent the Notice of Termination of Leases on January 13, 2023 did PSI send a schedule for implementing the IMW to DTSC on February 3, 2023. BNSF is informed and believes that PSI did not initiate any activity to implement the IMW, other than providing the schedule to DTSC on February 3, 2023. Because of PSI's continued and multi-decade failure to complete remediation of the Property, BNSF has no confidence that PSI will complete the required cleanup. Accordingly, on February 22, 2023, BNSF provided notice to PSI confirming that PSI no longer had permission to access the Property.

**PSI Fails to Remediate the Property in Accordance with the Leases, 2004 Final Judgment, 2004 Consent Agreement, and 2016 Stipulated Judgment**

40.     For more than 20 years, PSI has been bound by court order and administrative orders of DTSC to remediate the contamination at the Property to a level acceptable to DTSC. Despite this passage of time, and BNSF's repeated demands that PSI undertake the required actions to clean up the Property in accordance with the law, the Leases, and court and administrative orders, PSI has continuously failed and refused to do so.

17

41.     In addition to the above, Defendant has failed and refused to comply with its rental payment obligations under Section No. 3 of the 1977 Lease (Contract No. 154033) resulting in total outstanding back rent due of approximately $626,789, which amount continues to accrue, plus interest.

42.     In addition to the above, Defendant has failed and refused to comply with its rental payment obligations under Section No. 3 of the 1978 Lease (Contract No. 158246) resulting in total outstanding back rent due of approximately $439,890, which amount continues to accrue, plus interest.

43.     In total, PSI owes BNSF approximately $1,066,679 dollars in unpaid rent, plus interest.

44.     On January 13, 2023, BNSF served on PSI a Notice of Termination of Leases, providing a 30-day notice period for cancelling the 1977 Lease and the 1978 Lease under Section 14 of each lease.

45.     On February 8, 2023, in response to the Notice of Termination of Leases, PSI confirmed that it would "return" the Property to BNSF on February 12, 2023.

46.     On or before February 12, 2023, on information and belief, Defendant PSI vacated the Property.

47.     BNSF entered into a Voluntary Cleanup Agreement with DTSC on April 11, 2023 to promptly carry out the cleanup of the Property under DTSC oversight.

48.     BNSF tendered the foregoing claims to PSI, as well as demanded that PSI indemnify BNSF as required by the Leases, by a Notice of Claim letter to PSI sent on May 16, 2023.

49.     On June 14, PSI's counsel sent a letter to the undersigned, captioned "Breach of Contract Notice to BNSF Railway." In its letter, PSI alleges that it is BNSF which has breached the leases. PSI made no statement that it would honor its indemnity obligations to BNSF.

4888-4419-0311.v2

50. As of the date of filing this Complaint, PSI has refused BNSF's claims as well as its demand for indemnity.

51. As a result of the foregoing, BNSF has been left with no choice but to initiate this litigation and seek the Court's assistance in compelling PSI to perform its contractual, statutory, legal, and administrative obligations.

52. Accordingly, BNSF seeks satisfaction from PSI for damage to its Property, for the cost to remediate the Property, for future costs it may incur related to PSI's release of hazardous substances at the Property, for unpaid rent, and for related costs and damages

## FIRST CAUSE OF ACTION

### (Specific Performance)

53. Plaintiff incorporates by reference the allegations set forth in Sections 1 through 52 of the Complaint, as if set forth in full.

54. Plaintiff and Defendant are parties to the Leases.

55. Plaintiff has performed all of its obligations and duties under the Leases, except those duties and obligations which Plaintiff was prevented or excused from performing by Defendant's default and breach of the Lease, among other things, and except those duties and obligations, if any, which have been waived or excused. Plaintiff is ready, willing, and able to perform any and all remaining obligations under the Leases.

56. Defendant has materially breached and continues to materially breach their obligations under the 1977 Lease by, among other things:

a. Failing to pay rent to Plaintiff for the ongoing use and occupancy of the Property, 1977 Lease, § 3;

b. Failing to handle, store, and dispose of hazardous substances and hazardous waste in compliance with all applicable Standards, 1977 Lease, § 6(a);

19

4888-4419-0311.v2

c.     Failing to hold harmless BNSF from all damage to property and related expenses resulting in whole or in part from Lessee's failure to comply with environmental laws at the Property, 1977 Lease, § 6(b);

d.     Failing to hold harmless BNSF from all damage to property related to PSI's use of the Property, 1977 Lease, § 9;

e.     Failing to hold harmless BNSF for defense of DTSC's administrative actions requiring cleanup of the Property, 1977 Lease, § 22;

f.     Failing to keep and maintain the Property "in such safe, sanitary, and sightly condition as is satisfactory" to Plaintiff, 1977 Lease, § 7;

g.     Failing to comply with "all requirements imposed by federal or state statutes, or by the ordinances, orders, or regulations of any governmental body having jurisdiction thereover…", 1977 Lease, § 8, including the 2004 Final Judgment, 2004 Consent Agreement and related workplans, and the 2016 Stipulated Judgment;

h.     Failing to remediate and restore the Property to substantially the same condition it was in prior to PSI taking occupation of the site, 1977 Lease, § 16; and,

i.     Failing to comply with all Standards concerning air quality, water quality, noise, hazardous substances and hazardous waste, 1977 Lease, § 22.

57.    Defendant has materially breached and continues to materially breach its obligations under the 1978 Lease by, among other things:

a.     Failing to pay rent to Plaintiff for the ongoing use and occupancy of the Property, 1978 Lease, § 3;

b.     Failing to handle, store, and dispose of hazardous substances and hazardous waste in compliance with all applicable Standards, 1978 Lease, § 6(a);

4888-4419-0311.v2

c.    Failing to hold harmless BNSF from all damage to property and related expenses resulting in whole or in part from Lessee's failure to comply with environmental laws at the Property, 1978 Lease, § 6(b);

d.    Failing to hold harmless BNSF from all damage to property related to PSI's use of the Property, 1978 Lease, § 9;

e.    Failing to hold harmless BNSF for defense of DTSC's administrative actions requiring cleanup of the Property, 1978 Lease, § 20;

f.    Failing to keep and maintain the Property "in such safe, sanitary, and sightly condition as is satisfactory" to Plaintiff, 1978 Lease, § 7;

g.    Failing to comply with "all requirements imposed by federal or state statutes, or by the ordinances, orders, or regulations of any governmental body having jurisdiction thereover…", 1978 Lease, § 8, including the 2004 Final Judgment, 2004 Consent Agreement and related workplans, and the 2016 Stipulated Judgment; and,

h.    Failing to remediate and restore the Property to substantially the same condition it was in prior to PSI taking occupation of the site, 1978 Lease, § 16; and,

i.    Failing to comply with all Standards concerning air quality, water quality, noise, hazardous substances and hazardous waste, 1978 Lease, § 20.

58.    Plaintiff has no adequate remedy at law as real estate is a unique property right.

59.    Plaintiff has been damaged by PSI's breaches of the Leases, and therefore requests the Court order that PSI fulfill its obligations under Section Nos. 3, 6, 7, 8, 16, and 22 of the 1977 Lease and Section Nos. 3, 6, 7, 8, 16, and 20 of the 1978 Lease.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

60.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 59 of the Complaint, as if set forth in full.

61.    Plaintiff and Defendant are parties to the Leases.

62.    Plaintiff has performed all of its obligations and duties under the Leases, except those duties and obligations which Plaintiff was prevented or excused from performing by Defendant's default and breach of the Leases, among other things, and except those duties and obligations, if any, which have been waived or excused. Plaintiff is ready, willing, and able to perform any and all remaining obligations under the Leases.

63.    Defendant has materially breached and continues to materially breach its obligations under the 1977 Lease by, among other things:

a.    Failing to pay rent to Plaintiff for the ongoing use and occupancy of the Property, 1977 Lease, § 3;

b.    Failing to handle, store, and dispose of hazardous substances and hazardous waste in compliance with all applicable Standards, 1977 Lease, § 6(a);

c.    Failing to hold harmless BNSF from all damage to property and related expenses resulting in whole or in part from Lessee's failure to comply with environmental laws at the Property, 1977 Lease, § 6(b);

d.    Failing to hold harmless BNSF from all damage to property related to PSI's use of the Property, 1977 Lease, § 9;

e.    Failing to hold harmless BNSF for defense of DTSC's administrative actions requiring cleanup of the Property, 1977 Lease, § 22;

f.    Failing to keep and maintain the Property "in such safe, sanitary, and sightly condition as is satisfactory" to Plaintiff, 1977 Lease, § 7;

22

4888-4419-0311.v2

g.      Failing to comply with "all requirements imposed by federal or state statutes, or by the ordinances, orders, or regulations of any governmental body having jurisdiction thereover…", 1977 Lease, § 8, including the 2004 Final Judgment, 2004 Consent Agreement and related workplans, and the 2016 Stipulated Judgment;

h.      Failing to remediate and restore the Property to substantially the same condition it was in prior to PSI taking occupation of the site, 1977 Lease, § 16; and,

i.      Failing to comply with all Standards concerning air quality, water quality, noise, hazardous substances and hazardous waste, 1977 Lease, § 22.

64.      Defendant has materially breached and continues to materially breach its obligations under the 1978 Lease by, among other things:

a.      Failing to pay rent to Plaintiff for the ongoing use and occupancy of the Property, 1978 Lease, § 3;

b.      Failing to handle, store, and dispose of hazardous substances and hazardous waste in compliance with all applicable Standards, 1978 Lease, § 6(a);

c.      Failing to hold harmless BNSF from all damage to property and related expenses resulting in whole or in part from Lessee's failure to comply with environmental laws at the Property, 1978 Lease, § 6(b);

d.      Failing to hold harmless BNSF from all damage to property related to PSI's use of the Property, 1978 Lease, § 9;

e.      Failing to hold harmless BNSF for defense of DTSC's administrative actions requiring cleanup of the Property, 1978 Lease, § 20;

f.      Failing to keep and maintain the Property "in such safe, sanitary, and sightly condition as is satisfactory" to Plaintiff, 1978 Lease, § 7;

g.      Failing to comply with "all requirements imposed by federal or state statutes, or by the ordinances, orders, or regulations of any governmental

body having jurisdiction thereover…", 1978 Lease, § 8, including the 2004 Final Judgment, 2004 Consent Agreement and related workplans, and the 2016 Stipulated Judgment; and,

       h.    Failing to remediate and restore the Property to substantially the same condition it was in prior to PSI taking occupation of the site, 1978 Lease, § 16; and,

       i.    Failing to comply with all Standards concerning air quality, water quality, noise, hazardous substances and hazardous waste, 1978 Lease, § 20.

65.    Defendant has not been excused from performing its obligations under Section Nos. 3, 6, 7, 8, 16, and 22 of the 1977 Lease and Section Nos. 3, 6, 7, 8, 16, and 20 of the 1978 Lease.

66.    As a result of Defendant's breach of the Leases, Plaintiff has incurred and will continue to incur damages in an amount to be proven at trial.

67.    As a direct and proximate result of Defendant's actions, Plaintiff has incurred and will continue to incur significant attorneys' fees and other expenses in connection with this Complaint.

## THIRD CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

68.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 67 of the Complaint, as if set forth in full.

69.    Plaintiff and Defendant are parties to the Leases.

70.    Under California law, the Leases include an implied covenant of good faith and fair dealing.

71.    Defendant has materially breached and continues to materially breach the covenant of good faith and fair dealing implied under the 1977 Lease by, among other things:

       a.    Failing to pay rent to Plaintiff for the ongoing use and occupancy of the Property, 1977 Lease, § 3;

24

b.      Failing to handle, store, and dispose of hazardous substances and hazardous waste in compliance with all applicable Standards, 1977 Lease, § 6(a);

c.      Failing to hold harmless BNSF from all damage to property and related expenses resulting in whole or in part from Lessee's failure to comply with environmental laws at the Property, 1977 Lease, § 6(b);

d.      Failing to hold harmless BNSF from all damage to property related to PSI's use of the Property, 1977 Lease, § 9;

e.      Failing to hold harmless BNSF for defense of DTSC's administrative actions requiring cleanup of the Property, 1977 Lease, § 22;

f.      Failing to keep and maintain the Property "in such safe, sanitary, and sightly condition as is satisfactory" to Plaintiff, 1977 Lease, § 7;

g.      Failing to comply with "all requirements imposed by federal or state statutes, or by the ordinances, orders, or regulations of any governmental body having jurisdiction thereover…", 1977 Lease, § 8, including the 2004 Final Judgment, 2004 Consent Agreement and related workplans, and the 2016 Stipulated Judgment;

h.      Failing to remediate and restore the Property to substantially the same condition it was in prior to PSI taking occupation of the site, 1977 Lease, § 16; and,

i.      Failing to comply with all Standards concerning air quality, water quality, noise, hazardous substances and hazardous waste, 1977 Lease, § 22.

72.      Defendant has materially breached and continues to materially breach the covenant of good faith and fair dealing implied under the 1978 Lease by, among other things:

a.      Failing to pay rent to Plaintiff for the ongoing use and occupancy of the Property, 1978 Lease, § 3;

25

b.    Failing to handle, store, and dispose of hazardous substances and hazardous waste in compliance with all applicable Standards, 1978 Lease, § 6(a);

c.    Failing to hold harmless BNSF from all damage to property and related expenses resulting in whole or in part from Lessee's failure to comply with environmental laws at the Property, 1978 Lease, § 6(b);

d.    Failing to hold harmless BNSF from all damage to property related to PSI's use of the Property, 1978 Lease, § 9;

e.    Failing to hold harmless BNSF for defense of DTSC's administrative actions requiring cleanup of the Property, 1978 Lease, § 20;

f.    Failing to keep and maintain the Property "in such safe, sanitary, and sightly condition as is satisfactory" to Plaintiff, 1978 Lease, § 7;

g.    Failing to comply with "all requirements imposed by federal or state statutes, or by the ordinances, orders, or regulations of any governmental body having jurisdiction thereover…", 1978 Lease, § 8, including the 2004 Final Judgment, 2004 Consent Agreement and related workplans, and the 2016 Stipulated Judgment;

h.    Failing to remediate and restore the Property to substantially the same condition it was in prior to PSI taking occupation of the site, 1978 Lease, § 16; and,

i.    Failing to comply with all Standards concerning air quality, water quality, noise, hazardous substances and hazardous waste, 1978 Lease, § 20.

73.    Defendant has not been excused from performing its obligations under the covenant of good faith and fair dealing implied in Section Nos. 3, 6, 7, 8, 16, and 22 of the 1977 Lease and Section Nos. 3, 6, 7, 8, 16, and 20 of the 1978 Lease.

74.    Defendant's breach of the implied covenant of good faith and fair dealing constitutes a material breach of the Leases.

26

4888-4419-0311.v2

75.    As a result of Defendant's breach of the implied covenant of good faith and fair dealing under the Leases, Plaintiff has incurred and will continue to incur damages in an amount to be proven at trial.

76.    As a direct and proximate result of Defendant's actions, Plaintiff has incurred and will continue to incur significant attorneys' fees and other expenses in connection with this Complaint.

## FOURTH CAUSE OF ACTION

### (Express Contractual Indemnity)

77.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 76 of the Complaint, as if set forth in full.

78.    Plaintiff and Defendant are parties to the Leases.

79.    Plaintiff has performed all of its obligations and duties under the Leases, except those duties and obligations which Plaintiff was prevented or excused from performing by Defendant's default and breach of the Leases, among other things, and except those duties and obligations, if any, which have been waived or excused.  Plaintiff is ready, willing, and able to perform any and all remaining obligations under the Leases.

80.    Pursuant to Section 6 of the 1977 Lease, Defendant is obligated "to assume liability for and to save and hold harmless [Plaintiff] from and against all injuries to any person and damage to property, including without limitation, employes [sic] and property of Lessor and Lessee and all related expenses, including without limitation attorneys' fees, investigators' fees and litigation expenses, resulting in whole or in part from Lessee's failure to comply with any Standard issued by any governmental authority concerning hazardous substances and/or hazardous waste."

81.    Pursuant to Section 9 of the 1977 Lease, Defendant is obligated to "indemnify and save harmless [Plaintiff] against all loss, damage or expense which [Plaintiff] may sustain, incur, or become liable for," arising in any manner out of

4888-4419-0311.v2

Defendants' use of the Property, breach of the Lease and/or the acts or omissions of Defendant's employees, agents, and invitees.

82.     Pursuant to Section 22 of the 1977 Lease, Defendant is obligated to "assume liability for and shall save and hold harmless [Plaintiff] from any claim of a violation of Standards . . . which results from Lessee's use of the Premises . . . . Lessee, at its cost, shall assume the defense of all such claims regardless of whether they are asserted against Lessee or Lessor."

83.     Pursuant to Section 6 of the 1978 Lease, Defendant is obligated "to assume liability for and to save and hold harmless [Plaintiff] from and against all injuries to any person and damage to property, including without limitation, employes [sic] and property of Lessor and Lessee and all related expenses, including without limitation attorneys' fees, investigators' fees and litigation expenses, resulting in whole or in part from Lessee's failure to comply with any Standard issued by any governmental authority concerning hazardous substances and/or hazardous waste."

84.     Pursuant to Section 9 of the 1978 Lease, Defendant is obligated to "indemnify and save harmless [Plaintiff] against all loss, damage or expense which [Plaintiff] may sustain, incur, or become liable for," arising in any manner out of Defendant's use of the Property, breach of the Lease and/or the acts or omissions of Defendant's employees, agents, and invitees.

85.     Pursuant to Section 20 of the 1978 Lease, Defendant is obligated to "assume liability for and shall save and hold harmless [Plaintiff] from any claim of a violation of Standards . . . which results from Lessee's use of the Premises . . . . Lessee, at its cost, shall assume the defense of all such claims regardless of whether they are asserted against Lessee or Lessor."

86.     Defendant's indemnity obligations under Sections 6, 9, and 22 of the 1977 Lease and Sections 6, 9, and 20 of the 1978 Lease were and are triggered in

28

4888-4419-0311.v2

connection with the 2004 Final Judgment, 2004 Consent Agreement, and 2016 Stipulated Judgment.

87.    Defendant has breached and continues to breach the indemnity provisions set forth in Sections 6, 9, and 22 of the 1977 Lease and Sections 6, 9, and 20 of the 1978 Lease by failing to take all necessary and appropriate actions to remediate the Property in accordance with DTSC's orders and the 2004 Final Judgment, 2004 Consent Agreement, and 2016 Stipulated Judgment, and to hold Plaintiff harmless from all liability and loss, as they previously agreed in Sections 6, 9, and 22 of the 1977 Lease and Sections 6, 9, and 20 of the 1978 Lease, and as demanded by Plaintiff.

88.    As a result of Defendant's breach of the indemnity obligations under Sections 6, 9, and 22 of the 1977 Lease and Sections 6, 9, and 20of the 1978 Lease, Plaintiff has incurred and will continue to incur damages in an amount to be proven at trial.

89.    As a direct and proximate result of Defendant's actions, Plaintiff has incurred and will continue to incur significant attorneys' fees and other expenses in connection with this Complaint.

## FIFTH CAUSE OF ACTION

### (Nuisance)

90.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 89 of the Complaint, as if set forth in full.

91.    Defendant allowed hazardous substances to be discharged into or disposed on the Property, or knew of the contamination and failed to act to remediate the contamination, thereby permitting a nuisance on the Property.

92.    Defendant's acts allowed hazardous substances to physically intrude upon Plaintiff's property and to interfere with Plaintiff's use and enjoyment of its land, and therefore constitute a private nuisance, which is continuous and ongoing today.

29

93.     Defendant's activities at the Property interfered with Plaintiff's right to use, possess, and enjoy the Property. At no time did Plaintiff consent to Defendant's tortious conduct.

94.     On information and belief, the nuisance caused by Defendant's acts is a continuing nuisance, and can be abated.

95.     As a direct and proximate result of Defendant's tortious conduct, Plaintiff has suffered losses and damages as set forth above.

96.     Defendant knew that its alleged acts and omissions described above would cause injury and damage, including contamination of the Property with hazardous substances. Defendant committed each of the above-described acts and omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct is reprehensible, despicable, and was performed to minimize Defendant's cost of compliance and maximize profits in conscious disregard of the probable dangerous consequences of that conduct and its foreseeable impact upon human health, the environment, and Plaintiff's Property. Therefore, Plaintiff requests an award of punitive damages under California Civil Code section 3294 in an amount that is sufficient to punish Defendant and that fairly reflects the aggravating circumstances alleged herein. Cal. Civ. Code § 3294.

## SIXTH CAUSE OF ACTION

### (Trespass)

97.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 96, as though fully set forth herein.

98.     Plaintiff is the owner of the Property.

99.     Defendant allowed hazardous substances to be discharged into or disposed on the Property, or knew of the contamination and failed to act to remediate the contamination.

100.    Defendant's acts allowed hazardous substances to physically intrude upon Plaintiff's property.

101.   Defendant's activities at the Property interfered with Plaintiff's exclusive right to use, possess, and enjoy the Property. At no time did Plaintiff consent to Defendant's tortious conduct.

102.   Plaintiff has not consented to, and does not consent to, the disposal of the contamination onto Plaintiff's Property alleged herein. Defendant knew or reasonably should have known that Plaintiff would not consent to this trespass.

103.   On information and belief, the trespass caused by Defendant's acts is a continuing trespass, and can be abated.

104.   As a direct and proximate result of Defendant's tortious conduct, Plaintiff has suffered losses and damages as set forth above.

105.   As a direct and proximate result of Defendant's acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur, investigation, treatment, remediation, and monitoring costs and expenses related to the contamination of the Property in an amount to be proved at trial.

106.   For the reasons set forth and specifically alleged in paragraph 96, Plaintiff is entitled to an award of punitive damages under California Civil Code section 3294 against Defendant that is sufficient to punish Defendant and that fairly reflects the aggravating circumstances alleged herein. Cal. Civ. Code § 3294.

## SEVENTH CAUSE OF ACTION

### (Negligence)

107.   Plaintiff incorporates by reference the allegations in Paragraphs 1 through 106, as though fully set forth herein.

108.   At all times material herein, Defendant had a duty to Plaintiff to act with due and reasonable care.

109.   Defendant violated this duty of due care by negligently, recklessly, or intentionally concealing or failing to disclose the presence of contamination on and beneath the Property, and by negligently, recklessly, or intentionally concealing or failing to redress the presence of contamination on the Property.

31

110.   As a direct and proximate result of Defendant's negligence, Plaintiff has suffered damages as set forth above.

## EIGHTH CAUSE OF ACTION

### (Waste)

111.   Plaintiff incorporates by reference the allegations in Paragraphs 1 through 110, as though fully set forth herein.

112.   At all times material herein, Defendant was the lessee of the subject Property.

113.   Through Defendant's operations at the Property, Defendant contaminated the Property's soil, air and water, diminishing its value, and interfering with Plaintiff's interest in its Property. Cal Civ. Code §§ 821, 826.

114.   Defendant was subject to multiple regulatory actions and court orders from DTSC seeking to address the contamination at the Property, including but not limited to, the 2004 Final Judgment, the 2004 Consent Decree, and the 2016 Stipulated Judgment.

115.    Because of Defendant's decades-long failure to comply with State agency administrative orders and court orders, Plaintiff has terminated the lease with Defendant, and has begun to repair the environmental harm caused by Defendant in order to restore the Property's value.

116.   Plaintiff is entitled to recover damages from Defendant at least equal to Plaintiff's cost to repair the environmental damage at the Property to the level required by the DTSC.

## NINTH CAUSE OF ACTION

### (Equitable and Implied Indemnity and Contribution)

117.   Plaintiff incorporates by reference the allegations in Paragraphs 1 through 116, as though fully set forth herein.

118.   Through use or operations at the Property, Defendant is legally responsible for the contamination on and underlying the Property.

32

4888-4419-0311.v2

119.   As a direct and proximate result of the acts or omissions of the Defendant set forth above, Plaintiff has and will continue to expend monies to investigate, test, and clean up the contamination on and under the Property. Plaintiff has paid for and conducted such activities and therefore has incurred and will continue to incur costs and expenses for the past, current, and future investigation, cleanup, remediation, and removal actions associated with hazardous substances and contaminants at, on, and under the Property, pursuant to applicable law and regulations, which should have been paid by Defendant.

120.   Plaintiff is entitled to contribution from Defendant under California Civil Code section 1432 or indemnification under state or federal law for any liability arising from the contamination of the Property.

121.   Plaintiff is entitled to indemnity from Defendant for all such monies expended and to be expended by Plaintiff to remedy the contamination on and underlying the Property, and for all other damages incurred by Plaintiff.

## TENTH CAUSE OF ACTION

### (Contribution under California's Hazardous Substances Account Act)

122.   Plaintiff incorporates by reference the allegations in Paragraphs 1 through 121, as though fully set forth herein.

123.   The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health and Safety Code section 25300 et seq. ("**HSAA**") provides a private right of action for parties who have incurred removal or remediation costs under the HSAA. Cal. Health and Saf. Code, § 25363(d). Pursuant to the HSAA, such parties may seek contribution or indemnity for those costs from any person who is a liable person within the meaning of California Health and Safety Code section 25323.5.

124.   Plaintiff is informed and believes, and therefore alleges, that Defendant is a "person" as defined in California Health and Safety Code section 25319.

33

4888-4419-0311.v2

125.    Plaintiff is informed and believes, and therefore alleges, that Defendant is a "responsible party" as defined in California Health and Safety Code section 25323.5.

126.    Plaintiff has incurred and may in the future be compelled to incur response costs, as set forth in California Health and Safety Code section 25363(d), that are related to the Property at issue in this action.

127.    Plaintiff has incurred and may in the future be compelled to incur attorneys' fees, costs, expenses, and in the future may incur liability by reasons of settlement, judgment, or defense related to the Property at issue in this action.

128.    Plaintiff may in the future be compelled to incur future costs necessary to monitor, assess, and evaluate the release or threatened release of hazardous substances at, and near, the Property and surrounding areas.

129.    Accordingly, Plaintiff is entitled to contribution from Defendant, up to an amount to be proven at trial or otherwise, pursuant to California Health and Safety Code section 25363.

130.    Upon filing of such claim, at such time as is required, Plaintiff will give written notice to the Director of the California Environmental Protection Agency, Department of Toxic Substances Control, pursuant to California Health and Safety Code section 25363(d).

## ELEVENTH CAUSE OF ACTION

### (Contribution under Federal Common Law)

131.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 130 of the Complaint, as if set forth in full.

132.    Defendant has not paid its equitable share of response costs at the Site, and Plaintiff is entitled under federal common law to contribution from Defendant for response costs incurred by BNSF in connection with the Property.

34

## TWELFTH CAUSE OF ACTION

### (Declaratory Relief)

133.  Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 132 of the Complaint, as if set forth in full.

134.  An actual controversy has arisen and now exists between Plaintiff and Defendant concerning PSI's actions (or lack thereof) in maintaining and remediating the Property in accordance with the 1977 Lease, 1978 Lease, 2004 Final Judgment, 2004 Consent Agreement, and 2016 Stipulated Judgment, as alleged in this Complaint, and the respective rights and duties of Plaintiff BNSF and Defendant.

135.  Plaintiff contends that: (i) PSI has materially breached and continues to materially breach its obligations under Section Nos. 3, 6, 7, 8, 16, and 22 of the 1977 Lease and Sections 3, 6, 7, 8, 16, and 20 of the 1978 Lease and the covenant of good faith and fair dealing implied therein; (ii) PSI is obligated to indemnify, defend, and hold harmless Plaintiff from any claim arising out of PSI's use, contamination, and ongoing remediation of the Property in accordance with Sections 6, 9, and 22 of the 1977 Lease and Sections 6, 9, and 20 of the 1978 Lease, 2004 Final Judgment, 2004 Consent Agreement, and 2016 Stipulated Judgment; (iii) PSI has materially breached and continues to materially breach its obligations under Sections 6, 9, and 22 of the 1977 Lease and Sections 6, 9, and 20 of the 1978 Lease to indemnify, defend, and hold harmless Plaintiff from any claim arising out of its use, contamination, and the ongoing remediation of the Property by failing to take all necessary and appropriate actions to remediate the Property and to hold Plaintiff harmless from all liability and loss; and (iv) Plaintiff has incurred and will continue to significant incur damages in an amount to be proven at trial as a result of Defendants' actions, plus attorneys' fees and litigation costs.

136.  PSI is liable to Plaintiff under the California HSAA for costs and damages that have been or will be incurred for the investigation, assessment,

4888-4419-0311.v2

1  monitoring, treatment, removal, remediation, and/or clean-up of hazardous
2  substances on the Property.

3       137.   Plaintiff is informed and believes and based thereon alleges that
4  Defendants disputes these contentions.

5       138.   As a result of the differing positions between Plaintiff and
6  Defendants, there has been and is now a dispute between the parties.  A judicial
7  determination is necessary and appropriate at this time to determine what rights the
8  parties have with respect to the contentions presently disputed.

9  **PRAYER**

10  **WHEREFORE**, Plaintiff prays for relief against Defendants as follows:

11       1.   General damages in excess of the jurisdictional minimum of court,
12  and in accordance with proof;

13       2.   The costs of investigating, characterizing, removing, and remediating
14  the Property to the standard approved by relevant regulatory agencies;

15       3.   The total amount of outstanding rent now presently due and owing
16  under the Leases;

17       4.   Compensatory damages according to proof arising out of Defendant's
18  material breach of its obligations under the Leases;

19       5.   For an order confirming Defendant's indemnity and defense
20  obligations under Sections 6, 9, and 22 of the 1977 Lease and Sections 6, 9, and 20
21  of the 1978 Lease and compensatory damages according to proof arising out of
22  Defendant's material breach of these obligations to date;

23       6.   Judgment in favor of Plaintiff and against Defendant for the
24  Defendant's equitable share of response costs already incurred and to be incurred
25  by BNSF in connection with the Property, with interest, as allowed by law,
26  pursuant to federal common law;

27       7.   Judgment in favor of Plaintiff and against Defendant for the
28  Defendant's equitable share of response costs already incurred and to be incurred

36

1   by BNSF in connection with the Property, with interest, as allowed by law,

2   pursuant to California Health and Safety Code section 25323;

3        8.      Judgment declaring the Defendant's equitable share of liability to

4   Plaintiff for future response costs to be incurred in connection with the Property,

5   pursuant to California Health and Safety Code section 25323 and 28 U.S.C. §

6   2201;

7        9.      Punitive damages;

8        10.     Attorneys' fees;

9        11.     Costs of suit;

10       12.     Pre- and post-judgment interest; and,

11       13.     Such other and further relief as the Court may deem just and proper.

12

13  Dated:  June 29, 2023                Respectfully submitted,

14

15                                       BARG COFFIN LEWIS & TRAPP, LLP

16

17                                       By:      /s/ David M.  Metres

18                                               DAVID M METRES
                                                 Email:  dmetres@bargcoffin.com

19
                                         Attorneys for Plaintiff,
20                                       BNSF RAILWAY COMPANY, a Delaware
                                         corporation

21

22

23

24

25

26

27

28

37

4888-4419-0311.v2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable.

Dated:  June 29, 2023                    Respectfully submitted,

BARG COFFIN LEWIS & TRAPP, LLP

By:      /s/ David M.  Metres
DAVID M METRES
Email:  dmetres@bargcoffin.com

Attorneys for Plaintiff,
BNSF RAILWAY COMPANY, a Delaware
corporation

38

4888-4419-0311.v2