

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| BNSF RAILWAY COMPANY, | Case No.: 23-cv-01202-JLB |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING PACIFIC STEEL, INC.'s MOTION REGARDING AMENDED RESPONSES TO REQUESTS FOR ADMISSIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 36(b)** |
| PACIFIC STEEL, INC., | |
| Defendant. | |
| | **[ECF Nos. 90, 96, 97]** |

Before the Court is the Motion Regarding Amended Responses to Requests for Admission Pursuant to Federal Rule of Civil Procedure 36(b) ("Motion") filed by Defendant Pacific Steel, Inc. ("Defendant"). For the reasons set forth below, Defendant's Motion is **DENIED**.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff BNSF Railway Company ("Plaintiff") is the owner of property located in National City, San Diego County, California on San Diego County Assessor Parcel Numbers 559-040-46 and 559-040-52 (the Property). (ECF No. 1 at 3, ¶ 6.) In 1977, Plaintiff's predecessor in interest, the Atchison, Topeka & Santa Fe Railway Company

23-cv-01202-JLB

("ATSF"), as lessor, executed a lease agreement ("1977 Lease" or "1977 Lease Agreement") with Scrap Disposal, Inc. ("SDI"), as lessee, for the use of the northern and central portions of the Property for the handling and storage of scrap materials. (*Id.* at 3, ¶ 7.) In 1978, ATSF and SDI entered into a second lease agreement ("1978 Lease" or "1978 Lease Agreement")[1] covering the southern portion of the Property. (*Id.* at 7, ¶ 12.)

In May 1980, SDI filed for protection under Chapter 11 of the United States Bankruptcy Code. (ECF No. 90-14 at 3.) In July 1981, a trustee in SDI's bankruptcy proceedings assumed the Lease. (ECF No. 90-9 at 2-3.) The bankruptcy trustee assigned the Leases to Western States Investment Corporation, which in turn assigned the Leases to San Diego Steel, Inc. ("SDS"). (*Id.*; ECF No. 96-1 at 2, ¶ 3.) In August 1981, SDS filed a Certificate of Amendment of Articles of Incorporation changing its name to Pacific Steel, Inc. ("PSI"). (ECF No. 90-13 at 5; *see also* ECF No. 103-2 at 2, ¶ 2.) In November 1982, the United States Bankruptcy Court for the Southern District of California entered an order approving a liquidating plan of reorganization for SDI. (ECF No. 90-14.)

Plaintiff commenced the instant litigation against Defendant on June 29, 2023, seeking "redress against its former tenant[, Defendant,] . . . for damaging [Plaintiff's] property located immediately adjacent to and west of [Defendant's] property at 1700 Cleveland Avenue in National City, California . . . and for failing to pay rent." (ECF No. 1 at 2, ¶ 1.) In its Complaint, Plaintiff alleges the following:

Defendant operated a scrap metal recycling business on the Property pursuant to the Lease Agreements. (*Id.* at 2 & 11, ¶¶ 1 & 16.) The Lease Agreements contain provisions for payment of rent and indemnification by Defendant for all loss, damage, or expense incurred by Plaintiff arising out of Defendant's use of the Property, including any "fines

---

[1] The 1977 Lease Agreement and the 1978 Lease Agreement were amended in 1978. (ECF Nos. 80-11 & 80-12.) The original lease agreements and the supplemental lease agreements shall be referred to collectively as the "Leases" or the "Lease Agreements."

23-cv-01202-JLB

penalties, clean-up and disposal costs." (*Id.* at 4–11, ¶¶ 8–15.)

The California Department of Toxic Substances Control ("DTSC") sued Defendant for environmental violations in 2004 and 2015, and the state court ordered Defendant to investigate and remediate the contamination. (*Id.* at 2, ¶ 1.) As part of a July 2004 stipulated judgment, Defendant agreed to monetary terms and to enter into a Corrective Action Consent Agreement with DTSC. (*Id.* at 12–13, ¶¶ 21– 22.) As part of the Corrective Action Consent Agreement, Defendant was required to submit an Interim Measures Workplan ("IMW") containing proposals to remediate contamination and to reduce the threat of the release of hazardous waste or hazardous constituents on the Property. (*Id.* at 13, ¶ 23.) During inspections of the Property between 2010 and 2013, DTSC observed several violations of the Hazardous Waste Control Law ("HWCL"), the California Health & Safety Code, and the 2004 stipulated judgment. (*Id.* at 14, ¶ 28.)

In 2015, DTSC sued Defendant again, alleging that Defendant had "committed multiple violations of the HWCL," including by storing hazardous waste without authorization and by violating other provisions of the HWCL and the terms of the 2004 stipulated judgment. (*Id.* at 15, ¶ 30.) In a stipulated judgment approved by the state court in January 2016, Defendant agreed to both injunctive and monetary terms and conditions. (*Id.* at 16, ¶¶ 32–33.) In May 2019, Defendant submitted a draft IMW to DTSC. (*Id.* at 35, ¶ 35.) Defendant's draft IMW identified elevated concentration of metals, polychlorinated biphenyls, polycyclic aromatic hydrocarbon compounds, and petroleum hydrocarbons in the soil at the Property. (*Id.*) The IMW was approved by DTSC for implementation on May 31, 2022. (*Id.* at 16, ¶ 36.)

On December 6, 2022, DTSC sent Defendant a letter stating that Defendant was out of compliance with prior agreements. (*Id.* at 17, ¶ 38.)

On January 13, 2023, Plaintiff served on Defendant a Notice of Termination of Leases, providing the requisite 30-day notice under Section 14 of the Lease Agreements.

///

///

3

23-cv-01202-JLB

(*Id.* at 18, ¶ 44.)  After Plaintiff sent the Notice of Termination of Leases, Defendant sent a schedule for implementing the IMW to DTSC on February 3, 2023.  (*Id.* at 17, ¶ 39.) Several weeks later, Plaintiff denied Defendant permission to access the Property.  (*Id.*) On April 11, 2023, Plaintiff entered into a Voluntary Cleanup Agreement with DTSC to promptly carry out the cleanup of the Property under DTSC oversight.  (*Id.* at 18, ¶ 47.) Plaintiff asserts that it remediated the Property in accordance with the 2021 IMW.  (ECF No. 80-3 at 6, ¶ 19.)  Plaintiff tendered its claims to Defendant and demanded that Defendant indemnify Plaintiff for the cleanup, as required by the Lease Agreements.  (ECF No. 1 at 18, ¶ 48.)  Defendant responded on June 14, 2023, asserting that Plaintiff's breach of the Lease Agreements excused its obligation to indemnify Plaintiff under those agreements.  (*Id.* at 18, ¶ 49.)

Plaintiff's June 2023 Complaint brings the following causes of action against Defendant: (1) specific performance; (2) breach of contract; (3) breach of implied covenant of good faith and fair dealing; (4) express contractual indemnity; (5) nuisance; (6) trespass; (7) negligence; (8) waste; (9) equitable and implied indemnity and contribution; (10) contribution under California's Hazardous Substances Account Act; (11) contribution under federal common law; and (12) declaratory relief.  (*Id.* at 19–36, ¶¶ 53–138.)  Plaintiff seeks general damages, the costs of investigating, characterizing, removing, and remediating the Property, the total amount of outstanding rent, compensatory damages, an order confirming Defendant's indemnity and defense obligations, Defendant's equitable share of response costs with interest, punitive damages, attorney's fees, interest, and costs of suit.  (*Id.* at 36–37.)

In paragraph 7 of its Complaint, Plaintiff "allege[d] that Defendant [] is the successor-in-interest to [SDI]."  (*Id.* at 4, ¶ 7; *see also id.* at 7, ¶ 12.)  Defendant asserted in its Answer that it "lacks information sufficient to form a belief as to the allegations of

///

///

///

4

Paragraph 7, and on that basis denies them." (ECF No. 11 at 2, ¶ 7; *see also id.* at 2, ¶ 12.) In March 2024, Plaintiff propounded interrogatories, requests for production, and requests for admission. (ECF No. 90-2 at 2, ¶ 4.) In April and June 2024, Defendant served responses to set one of Plaintiff's discovery requests. (*Id.* at 2, ¶ 5; ECF No. 90-6 at 2, 4.) On March 4, 2025, Defendant served amended responses to Plaintiff's requests for admission (Amended Responses). (ECF No. 90-2 at 2, ¶ 6; ECF No. 90-5.) In its Amended Responses, Defendant objected to the requests for admission on the basis that "the term 'successor' [was] undefined, subject to varying interpretations, [was] used inappropriately and incorporate[d] inappropriate legal conclusions." (ECF No. 90-5 at 4-5, ¶ 8.) Further, Defendant asserted that it "is not the legal successor to [SDI]," as Defendant merely "succeeded" SDI as a tenant and is not liable for SDI's alleged contamination of Plaintiff's Property. (*Id.* at 5, ¶ 8.) Thus, Defendant maintained that liability lay with BNSF. (*Id.*)

The requests for admission, initial responses and Amended Responses at issue are as follows:

> **Request for Admission No. 2**
> "Admit that, from approximately 1978 to February 12, 2023, YOU conducted metal recycling operations on the BNSF PROPERTY."[2]
>
> **Response to Request No. 2**
> "Admit that [Defendant] engaged in metal recycling operations on portions of the [Plaintiff's] Property, as defined."[3]
>
> **Amended Response to Request No. 2**
> "Admitted that [Defendant] engaged in metal recycling operations on portions of the BNSF PROPERTY, as defined. Denied that [Defendant] commenced operations in 1978. [Defendant] accepted all right, title and interest in and to the Leases by Irrevocable Assignment of Lease and Acceptance of

---

[2] (ECF No. 90-5 at 5.)
[3] (ECF No. 96-5 at 4.)

23-cv-01202-JLB

Assignment dated July 29, 1981. [Defendant] is not the legal successor to Scrap Disposal Inc."[4]

**Request for Admission No. 6**
"Admit that [Plaintiff] incurred costs to restore the damage YOU caused to the BNSF PROPERTY."[5]

**Response to Request No. 6**
"Denied."[6]

**Amended Response to Request No. 6**
"Responding Party objects to the term "incurred," which is a term of art in connection with environmental litigation, rendering this Request vague, ambiguous, and confusing. Responding Party contends that [Plaintiff] did not "incur" costs in the sense that [Plaintiff] was under an obligation to pay them and that [Plaintiff] voluntarily chose to expend funds unnecessarily. Notwithstanding the foregoing objection, denied. [Plaintiff]'s and/or its prior tenants caused and/or contributed to historical contamination, including but not limited to petroleum hydrocarbons. [Defendant] is not responsible for any costs associated with [Plaintiff]'s efforts to remediate the Lease Area for [Plaintiff]'s or its prior tenants' historical contamination. By halting [Defendant]'s access to the Lease Area, stating it would not allow future access to the Lease Area and commencing cleanup work, [Plaintiff] prevented [Defendant] from continuing its indemnification for the cleanup."[7]

**Request for Admission No. 16**
"Admit that YOU are a successor to Scrap Disposal, Inc."[8]

**Response to Request No. 16**
"Admit."[9]

---

[4] (ECF No. 90-5 at 5.)
[5] (ECF No. 96-5 at 5.)
[6] (*Id.*)
[7] (ECF No. 90-5 at 5-6.)
[8] (ECF No. 96-5 at 7.)
[9] (*Id.*)

6

23-cv-01202-JLB

**Amended Response to Request No. 16**

"Denied. [Defendant] is not the legal successor to Scrap Disposal Inc. By assignment dated July 29, 1981, Joseph N. Fox, Trustee in bankruptcy, assigned all his right, title and interest in and to the [L]eases to Western States Investment Corporation. [Defendant] then accepted from Western States Investment Corp. the assignment of all right, title and interest in and to the [L]eases as of July 29, 1981.  [Defendant] "succeeded" Scrap Disposal Inc. as a tenant of [Plaintiff] but is not legally responsible for Scrap Disposal Inc.'s contamination of the site. That liability lies with [Plaintiff]."[10]

**Request for Admission No. 17**

"Admit that between August 1, 1977 and February 12, 2023, YOU (as successor to Scrap Disposal, Inc.) leased the real property identified as Exhibit A to the 1977 L[ease]" (herein, the "1977 LEASE AREA")."[11]

**Response to Request No. 17**

"Admit that [Defendant] has leased portions of the premises as defined in the lease, but the premises covered by the lease changed over time."[12]

**Amended Response to Request No. 17**

"Denied that [Defendant] is the "successor to Scrap Disposal, Inc" and denied that [Defendant] assumed the lease in 1977. Admitted that [Defendant] has leased portions of 1977 LEASE AREA, but the premises covered by the 1977 L[ease], and the terms of the lease agreement, changed over time, and [Defendant] did not become a tenant or accept assignment of the Leases until July 29, 1981.  In or about April 2018, [Defendant] ceased operations on the 1977 LEASE AREA and only maintained the 1977 L[ease] for purposes of access for remediation and compliance."[13]

---

[10] (ECF No. 90-5 at 6.)
[11] (ECF No. 96-5 at 7.)
[12] (*Id.*)
[13] (ECF No. 90-5 at 6-7.)

7

23-cv-01202-JLB

**Request for Admission No. 18**

"Admit that between November 1, 1978 and February 12, 2023, YOU (as successor to Scrap Disposal, Inc.) leased the real property identified as Exhibit A to the 1978 L[ease] . . . ."[14]

**Response to Request No. 18**

"Admit that [Defendant] has leased portions of the premises as defined in the lease, but the premises covered by the lease changed over time."[15]

**Amended Response to Request No. 18**

"Denied that [Defendant] is the "successor to Scrap Disposal, Inc." Denied that [Defendant] leased the referenced property until 2023. Admitted that [Defendant] has leased portions of the 1978 LEASE AREA, but the premises covered by the 1978 Lease, and the terms of the lease agreement, changed over time. [Defendant] did not accept assignment of the Leases until July 29, 1981, and [Defendant] did not use or occupy the 1978 LEASE AREA [sic] in approximately 2002. [Plaintiff] constructively evicted [Defendant] from the 1978 LEASE AREA (Southern Parcel) as of 2002 through its excavation activities. [Plaintiff] told [Defendant] no further rent was due under the 1978 Lease sometime around 2002."[16]

**Request for Admission No. 25**

"Admit that you have listed for sale your real property located at 1700 Cleveland Ave., National City, CA 91950 [sic] is presently for sale."[17]

**Response to Request No. 25**

"Denied."[18]

**Amended Response to Request No. 25**

"Admitted."[19]

---

[14] (ECF No. 96-5 at 8.)
[15] (*Id.*)
[16] (ECF No. 90-5 at 7.)
[17] (*Id.* at 8.)
[18] (ECF No. 80-29 at 3.)
[19] (ECF No. 90-5 at 8.)

23-cv-01202-JLB

In April 2025, counsel for Plaintiff sent counsel for Defendant a letter objecting to Defendant's withdrawal of its admission that it is a successor to SDI, noting that Defendant failed to file a motion seeking leave to withdraw or amend its admission in accordance with Federal Rule of Civil Procedure 36(b).  (ECF No. 90-2 at 2, ¶ 8; ECF No. 90-6 at 2-4.)  The parties met and conferred, and Plaintiff rejected Defendant's suggestion to seek an extension of fact discovery in exchange for Plaintiff's acceptance of the Amended Responses.  (ECF No. 90-2 at 2-3, ¶¶ 9-10.)

## II.    APPLICABLE LAW

Federal Rule of Civil Procedure 36 provides, in pertinent part:

> **(a) Scope and Procedure.**
>
> (1) *Scope.* A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> (A) facts, the application of law to fact, or opinions about either; and
> (B) the genuineness of any described documents.
>
> . . .
>
> **(b) Effect of an Admission; Withdrawing or Amending It.** A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.    Subject to Rule 16(e),[20] the court may permit

---

[20] Federal Rule of Civil Procedure 16(e) provides that

> [t]he court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence. The conference must be held as close to the start of trial as is reasonable, and must be attended by at least one attorney who will conduct the trial for each party and by any unrepresented party. The court may modify the order issued after a final pretrial conference only to prevent manifest injustice.

Fed. R. Civ. P. 16(e).

23-cv-01202-JLB

> withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.  An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

Fed. R. Civ. P. 36(a)(1), (b).  "The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995).  Regarding the second prerequisite, the Ninth Circuit has explained that

> [t]he prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission will now have to convince the factfinder of its truth.  Rather, it relates to the difficulty a party may face in proving its case, *e.g.,* caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted.  The party who obtained the admission has the burden of proving that withdrawal of the admission would prejudice the party's case.

*Hadley*, 45 F.3d at 1348 (citations and quotation marks omitted) (further explaining that "[c]ourts are more likely to find prejudice when the motion for withdrawal is made in the middle of trial," as "[o]nce trial begins, a more restrictive standard is to be applied in permitting a party to withdraw an admission").

"Trial courts have been advised to be cautious in exercising their discretion to permit withdrawal or amendment of an admission." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (citation and brackets omitted).  "Where the moving party has satisfied both prongs of the Rule 36(b) test, the district court may allow withdrawal, but is not required to do so." *S.E.C. v. Glob. Express Cap. Real Est. Inv. Fund, I, LLC*, 289 F. App'x 183, 191 (9th Cir. 2008) (citing *Conlon*, 474 F.3d at 625); *see also Conlon*, 474 F.3d at 621 (stating that "Rule 36(b) is permissive, not mandatory, with respect to the withdrawal of admissions").

///

## III.    PARTIES' ARGUMENTS

Defendant "requests that the Court issue an order specifically allowing [Defendant] to amend its response to [Request for Admission] No. 16" and, further, "that the Amended Responses dated March 4, 2025 be deemed [its] response."  (ECF No. 90-1 at 17.)  Defendant asserts that its amended response to Request for Admission No. 16 "was intended to correct the ambiguity created by [Plaintiff's] undefined use of the term 'successor' and to provide the Court with a truthful and accurate record for trial."  (*Id.* at 10.)  Defendant argues that Request for Admission No. 16 "concerns a substantive and core element of the instant matter"—namely, whether Defendant is the legal successor to SDI. (*Id.* at 12.)  According to Defendant, this issue bears upon "the extent" of its purported liability as a subsequent tenant under the Leases.  (*Id.*)  Defendant therefore maintains that amending its response to Request for Admission No. 16 is necessary in order to secure a "key component of its defense."  (*Id.* at 13.)  Further, Defendant points out that it denied successor liability in its Answer.  (*Id.* (citing ECF No. 90-4 at 3, ¶¶ 7, 12).)  Moreover, Defendant insists that "there are contractual and statutory bases under California law as well as federal bankruptcy law to conclude [that Defendant] is neither the legal successor to SDI nor liable for SDI's operations."  (*Id.*)  Defendant also highlights the provision in the lease assignment that Plaintiff would "look only to Assignee[, *i.e.*, Defendant,] to satisfy any liability for breach by lessee-assignee [*i.e.*, Defendant] occurring ***after* [*the*] *date of this Assignment*."  (*Id.* (quoting ECF No. 90-9 at 3-4 (emphasis added)).)  Thus, Defendant asserts that permitting amendment of its response to request for admission No. 16 "would promote the presentation of the merits of the action."  (*Id.* at 14 (quoting Fed. R. Civ. P. 36(b)).

Defendant also contends that granting the Motion would not prejudice Plaintiff, as the Court has not yet set a trial date.  (*Id.* at 15.)  Further, Defendant asserts that it offered Plaintiff the opportunity to conduct appropriate supplemental discovery regarding the question of successor liability, and that Plaintiff refused.  (*Id.*)  Defendant maintains that it "remains willing to afford [Plaintiff] appropriate discovery on the issue of successor

liability as approved by the Court." (*Id.* at 16.)   Moreover, Defendant contends that "reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice." (*Id.* at 16 (quoting *Conlon*, 474 F.3d at 624).)   Thus, Defendant insists that granting the Motion would not "unfairly prejudice" Plaintiff at trial. (*Id.* at 17.)

Plaintiff counters that the Court should deny the Motion, because Defendant admitted that it was a successor to SDI both in its April 24, 2024 responses to Plaintiff's requests for admission and in the deposition testimony of Sandra Mendez, Defendant's Rule 30(b)(6) witness. (*See* ECF No. 96 at 9 (citing ECF Nos. 96-2, 96-5).)[21]   Further, Plaintiff asserts that Defendant's written admissions were verified by a corporate representative and that Defendant's deposition testimony on successorship was conducted under penalty of perjury. (*Id.*)   Plaintiff highlights that Defendant only challenged discovery request terms, such as "successor," as vague after retaining new counsel and insists that there was no attempt to "confuse" or "trap" Defendant where Plaintiff had used the term "successor-in-interest" from the outset. (*Id.*)   Plaintiff also alleges that in January 1993, it sent Defendant a letter asserting that Defendant was liable for SDI's contamination of the Property under the doctrine of successor liability. (*Id.*)   Moreover, Plaintiff maintains that the Lease Assignment does not determine the issue of successor liability, as the cited portion merely provides that "[ATSF/BNSF] will look only to Assignee [San Diego Steel/PSI] to satisfy any liability for breach by lessee-assignee occurring after [the] date of this Assignment [(July 29, 1981)]." (*Id.* at 10-11 (quoting ECF No. 90-9 at 3).)   Plaintiff further asserts that Defendant fails to point to any specific language from the SDI's adversary proceeding in bankruptcy establishing that Defendant is not SDI's legal successor. (*Id.* at 11.)   Regardless, Plaintiff insists that Defendant has failed to prove that

---

[21] When questioned regarding whether Defendant acquired SDI's business, Sandra Mendez testified, "Yes, yes." (ECF No. 96-2 at 5.)   In response to a question regarding whether Defendant's admission vis-à-vis Request for Admission No. 16 that it is a successor to SDI related to Defendant's acquisition of SDI's business, Ms. Mendez testified, "Yes." (*Id.* at 6.)

SDI contaminated the Property. (*Id.* at 13.) Plaintiff also notes that the objective of the workplan designed by Defendant and implemented by Plaintiff was to remove contamination caused by Defendant. (*Id.*) Thus, Plaintiff maintains that denying the Motion would not undermine Defendant's presentation of the merits of its case. (*Id.*)

Moreover, Plaintiff asserts that permitting amendment of Defendant's admissions would prejudice Plaintiff absent further discovery. (*Id.* at 14.) Highlighting Defendant's failure to obtain permission from the Court before filing its Amended Responses, Plaintiff contends that this oversight is consistent with a "pattern of disregard" by Defendant for the Court's discovery deadlines and the Federal Rules of Civil Procedure. (*Id.* at 14-15.) Should the Court grant the Motion, Plaintiff requests that the Court: (i) authorize Plaintiff to serve on Defendant an additional ten written interrogatories and ten requests for admission related to the successorship issue, with Defendant's responses due within 15 days; (ii) permit one additional day of Fed. R. Civ. P. 30(b)(6) deposition testimony of Defendant on the successorship issue, at Defendant's expense, including attorneys' fees; and (iii) declare that Defendant's original discovery responses and deposition testimony may be used by Plaintiff to impeach Defendant and defense witnesses at trial. (*Id.* at 21.)

Defendant filed a reply, asserting that accepting its Amended Responses would promote truth seeking and due process. (ECF No. 97 at 9.) Defendant also contends that in drafting the remediation workplan, it did not accept liability for contamination caused by prior tenants. (*Id.* at 11.) Further, Defendant maintains that it would be inequitable to disallow the requested amendment, where Defendant seeks to rectify the errors of its prior counsel. (*Id.* at 12.)

## IV.    DISCUSSION

First, the parties focus their arguments on Request for Admission No. 16, without substantively addressing any of the other amended responses. With respect to Request for Admission No. 25, Defendant's initial response was a denial, and the amended response

was an admission. As a party has an ongoing obligation to supplement its responses,[22] and as Rule 36(b) does not require leave of court to change a response from a denial to an admission, the Court does not consider Request for Admission No. 25 to be part of this motion.

On the other hand, Requests for Admission Nos. 2 ("Admit that, from approximately 1978 to February 12, 2023, YOU conducted metal recycling operations on the BNSF PROPERTY") and 6 ("Admit that [Plaintiff] incurred costs to restore the damage YOU caused to the BNSF PROPERTY") are not addressed at all in Defendant's motion. For Request for Admission No. 2, the Court can imagine how Defendant might extend its argument about successor liability to the basis for endeavoring to amend its response to this request, but the Court limits itself to considering only the arguments made by the parties. *See Khoja v. Orexigen Therapeutics, Inc.*, 498 F. Supp. 3d 1296, 1309 n.4 (S.D.

---

[22] Rule 26 of the Federal Rules of Civil Procedure provides, in pertinent part:

**(e) Supplementing Disclosures and Responses.**

> **(1) *In General.*** A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
> > **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> >
> > **(B)** as ordered by the court.

Fed. R. Civ. P. 26(e)(1).

Cal. 2020) (declining to address an argument that was "not fully briefed by the [p]arties"); *see also Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (holding that appellant waived his challenge to the constitutionality of a statute by failing "to present a specific, cogent argument for [the court's] consideration," explaining that courts "will not manufacture arguments for an appellant" and will "review only issues which are argued specifically and distinctly in a party's opening brief"). As no argument is put forth by Defendant related to Requests for Admission Nos. 2 and 6, the motion to amend these responses is DENIED.

The Court then turns to Defendant's request to amend those responses wherein it initially admitted being a "successor to Scrap Disposal, Inc." (ECF No. 90-5 at 6-7; ECF No. 96-5 at 7-8.) As noted above, "[t]he first half of the test in Rule 36(b) is satisfied when upholding the admissions would *practically eliminate any presentation of the merits of the case.*" *Hadley*, 45 F.3d at 1348 (emphasis added). Here, Defendant maintains that amending its admission that it is SDI's successor is necessary in order to preserve a "key component of its defense." (ECF No. 90-1 at 12-13.) The Court finds that this falls short of establishing that upholding the admissions would practically eliminate any presentation of the merits of the case.

Through the instant litigation, Plaintiff seeks to recoup costs incurred remediating contamination *caused by Defendant*. Plaintiff seeks, *inter alia*, reimbursement from Defendant for the cost of remediating the Property in accordance with the 2021 IMW. (ECF No. 1 at 36, ¶ 2; ECF No. 80-3 at 6, ¶ 19 (attesting that "Plaintiff carried out the remediation of the BNSF Property in the summer of 2023 in accordance with the 2021 IMW"); ECF No. 80-25 at 7 (stating that Plaintiff's Revised Remedial Action Completion Report was prepared in accordance with the 2021 IMW); ECF No. 80-26 (DTSC's Conditional Approval of Revised Remedial Action Completion Report); (ECF No. 80-27 at 5, 15-16, & 25-28.) The objectives of the 2021 IMW included "conducting additional soil excavation of [constituents of concern] *related to [Defendant's] activities* in areas of identified risk to human health and the environment at the BNSF property" and

"conduct[ing] soil confirmation sampling in the excavated areas at the BNSF property to confirm the elimination of potential for risk to human health and the environment related to the soils *impacted by [Defendant's] activities*."  (ECF No. 80-14 at 14-15) (emphasis added).

Defendant argues that the question of successor liability is a key issue in the case, and it surely is.  The determination of whether Defendant is legally liable for the actions of SDI could impact certain aspects of liability and damages.  However, Defendant has not made the case that the admission that Defendant is a successor of SDI is dispositive on either liability or damages, or on any affirmative defense.  In fact, Defendant does not even argue that this is so, arguing, instead, that the determination of legal successorship "bears upon *the extent* of PSI's alleged liability . . .  as well as *the extent* of BNSF's liability as the owner of the BNSF Property and landlord to various scrap recycling facilities of over time."  (ECF No. 90-1 at 12 (emphasis added).)  Defendant's admissions, if allowed to stand, still leave much to be presented on the merits of this case.

Other cases where parties were granted relief from admissions and deemed admissions are informative.  In *Hadley*, the plaintiff had been assessed a tax penalty, and the United States filed a counterclaim to reduce that assessment to judgment.  *Hadley*, 45 F.3d at 1347.  The plaintiff failed to timely respond to requests for admissions, and "[t]he deemed admissions amounted to a complete admission of liability for willful failure to pay the taxes."  *Id.* at 1346.  Thus, the first half of the test in Rule 36(b), whether "upholding the admissions would practically eliminate any presentation of the merits of the case," was satisfied.  *Id*. at 1348.

In *Gallegos v. City of Los Angeles*, 308 F.3d 987 (9th Cir. 2002), a Fourth Amendment case, the Ninth Circuit affirmed the decision of the district court permitting defendants to withdraw their admissions and granting of summary judgment in favor of the defendants.  *Id*. at 993-94.  The two defendant officers in that case had admitted that they had arrested the plaintiff.  *Id*. at 990-91.  The plaintiff did not dispute that the officers had reasonable suspicion to detain him.  *Id*. at 990.  Further, the parties "apparently agree[d]"

23-cv-01202-JLB

the officers lacked probable cause for an arrest. *Id*. The only issue was whether plaintiff was subjected to an investigatory detention or an arrest. *Id*. at 990-91 (explaining that "[i]f this was an investigatory stop, it was legal, because it was justified by reasonable suspicion; if it was an arrest, it was illegal, because the police lacked probable cause to make an arrest). Without referencing *Hadley* or the "practically-eliminate-any-presentation-of-the-merits-of-the-case" standard, the Ninth Circuit affirmed the decision of the trial court to allow the withdrawal of the admission. The Court's analysis was that "the officers' subjective characterization of their actions as an arrest—which, as discussed earlier, has no bearing on our legal conclusion that, under the circumstances their actions did not amount to an arrest—confuses this issue." *Id.* at 993.

In *Conlon*, the plaintiff filed suit against the United States under the Federal Tort Claims Act and proceeded on a single negligence claim arising out of his arrest and subsequent imprisonment. *Conlon*, 474 F.3d at 619. He failed to respond to requests for admission, and as a result, was deemed to have admitted that the defendant had not acted negligently or wrongfully, and that neither his arrest nor his incarceration were the result of any negligence or wrongful act or omission by the defendant. *Id*. at 619-20. Those deemed admissions were the basis of the defendant's motion for summary judgment. *Id*. at 620. As such, the first half of the test in Rule 36(b) was satisfied in that upholding the admissions eliminated any presentation of the merits of the case. *Id*. at 622.

In *Snelson v. Daimler Trucks N. Am. LLC*, No. 22-CV-551-BAS-DDL, 2023 WL 3186293 (S.D. Cal. May 1, 2023), a district court decision in a product liability case in this district, the plaintiff failed to timely respond to requests for admissions, and his deemed admissions negated the existence of a defect as to the defendant's products. *Id.* at *1. Both halves of the 36(b) test were found to support relief from the deemed admissions. *Id*. at *3.

In *Black v. City of San Diego*, No. 21-CV-01990-RBM-JLB, 2025 WL 951283 (S.D. Cal. Mar. 28, 2025), another district court decision, the relevant claim was for excessive use of force by law enforcement officers. *Id.* at *4. The deemed admissions went to the

23-cv-01202-JLB

ultimate issue of whether the defendant used excessive force, to include admissions that she physically restrained plaintiff "using an unreasonable amount of force," that she had a duty to intervene to stop another officer's excessive use of force, and that she "applied handcuffs to [p]laintiff . . . so as to inflict pain on [him]." *Id.*   Consequently, the first prong was found to be satisfied. *Id.*

By contrast, here, the admission that Defendant is a successor to SDI does not go directly to the ultimate question at issue in the case and does not practically eliminate any presentation of the merits.  Defendant has not satisfied the first prong of Rule 36(b), so the Court need not address the second prong.

Even where the party seeking relief satisfies both prongs of Rule 36(b), a court still has discretion as to whether relief should be granted.  *See S.E.C.*, 289 F. App'x at 191 (citing *Conlon*, 474 F.3d at 625).  In those circumstances, courts have considered such things as how delayed the responses were, whether the propounding party is using the rule to harass the other side, and whether the deemed admissions are counterfactual.  *See Conlon*, 474 F.3d at 622 (holding that where both Rule 36(b) prongs are satisfied, courts may additionally consider whether a party demonstrated good cause for delay in responding to requests for admission, further explaining that Rule 36(b) "is not to be used in an effort to harass the other side" (citation and quotation marks omitted)); *Vecron Exim Ltd. v. Stokes*, No. CV 17-02944-CAS (RAOx), 2018 WL 6168022, at *5 (C.D. Cal. June 20, 2018) (permitting withdrawal of deemed admission, where both prongs of Rule 36(b) were satisfied and where the "admissions would be in direct contradiction with the amended answer, and would effectively eliminate full consideration of the merits of the case").  Had Defendant satisfied both prongs of the Rule 36(b) test, these other considerations would still weigh against the Court exercising its discretion to grant the requested relief.  The admissions at issue were not deemed admissions resulting from an inadvertent and brief delay in meeting a 30-day response deadline.  Instead, Defendant affirmatively responded to the requests at issue with admissions.  Defendant is a sophisticated, multi-million-dollar corporation that was represented by a sophisticated

23-cv-01202-JLB

national law firm.  Further, the Court sees no indication that Plaintiff is using the rule for purposes of harassment.  These factors would weigh against a discretionary grant of relief.  The only factor that would weigh in favor of a discretionary grant of relief, if the requirements of Rule 36(b) were satisfied, would be the disputed issue of whether the admissions are counterfactual or legally incorrect.  Thus, even if the prongs of Rule 36(b) were satisfied, the equities do not support granting of relief, and the Court would not exercise its discretion to do so.[23]

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated:  February 23, 2026

Hon. Jill L. Burkhardt
United States Magistrate Judge

---

[23] The meaning of what Defendant admitted to, if there is any ambiguity, is a question for another day.

23-cv-01202-JLB